UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| DEBORA SPANN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 4:21-cv-405-MTS |
| | ) | |
| NEIGHBORS CREDIT UNION, *et al.*, | ) | |
| | ) | |
| Defendants.[1] | ) | |

**MEMORANDUM AND ORDER**

Before the Court is Defendant Neighbors Credit Union's Motion for Summary Judgment, Doc. [39], pursuant to Federal Rule of Civil Procedure 56, on Plaintiff's four-count Complaint, Doc. [18], asserting claims for race discrimination under Title VII of the Civil Rights Act, 42 U.S.C. § 2000e *et seq.*, and for age discrimination under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621 *et seq*. For the reasons set forth below, the Court grants Defendant's Motion.

**I.    BACKGROUND**

Plaintiff Debora Spann is a fifty-year-old, African American woman who has worked for Defendant Neighbors Credit Union ("NCU") for over a decade. This case arises from allegations that NCU demoted Plaintiff based on her race and age and then made work conditions so intolerable that NCU constructively discharged her because of her age and race.

---

[1] The Court notes that the only other Defendant in this case, "John Doe Entity," was terminated on June 11, 2021. Doc. [18].

1

In June 2008, Bridgette Elliot, a Branch Manager at NCU, hired Plaintiff as an Assistant Branch Manager at NCU's Jennings Branch.[2]  When Elliot retired in 2017, Plaintiff applied for the position of Branch Manager.  The position was given to Carolyn Whitlock.  Whitlock is an African American woman over the age of 40 and, at the time, worked as the Branch Manager at NCU's Downtown Branch, one of the top performing branches.[3]  Because the Jennings Branch had been underperforming under Elliot, NCU management decided to place Whitlock into the Acting Branch Manager roll at Jennings to provide guidance and training to Plaintiff, in hopes that under Whitlock's direction, Plaintiff could develop the skills and talents necessary to take over the branch manager position.  Whitlock split her time between the Downtown Branch and Jennings Branch.

On December 29, 2018, while working as the Assistant Branch Manager of the Jennings Branch, Plaintiff had a verbal altercation with a subordinate in the presence of the customers.  Doc. [41-15].  Another NCU employee videorecorded part of the altercation.

On February 1, 2019, Plaintiff was called to a meeting with NCU management, Whitlock, Monica Burnett, and Kendra Martin, to discuss Plaintiff's reassignment.  All three employees are woman are over the age of forty, two are African American, and the other is part African American.  At this meeting, Plaintiff was told she was no longer being trained for Branch Manager and that she was reassigned to a Member Service Representative II position at a different branch location.  The parties dispute what NCU told Plaintiff was the reason for her demotion.  *See, e.g.*, Doc. [49] ¶ 121.

---

[2] NCU operates nine credit union branches throughout the St. Louis Metro area.
[3] Whitlock has a college degree, was employed in 2000 by NCU, and became a member of management five years after being employed.

The day after Plaintiff's reassignment, Plaintiff returned to the Jennings Branch, cleaned out her desk, and left without speaking to anyone. NCU gave Plaintiff a week off before she was scheduled to begin work at her new location. Plaintiff then took FMLA leave and did not communicate at all with NCU, until the day of her resignation on March 14, 2019. NCU reached out to Plaintiff during her FMLA leave to discuss her coming back to work after her leave expired, but Plaintiff never returned those messages. Plaintiff admits she was aware that NCU wanted her to return to work. Doc. [49] ¶ 150.

Plaintiff filed a four-count Amended Complaint under Title VII and the ADEA for age discrimination by demotion (Count I), race discrimination by demotion (Count II), age discrimination by constructive discharge (Count III), and race discrimination by constructive discharge (Count IV). Doc. [18]. In the current Motion, Defendant moves for summary judgment on all four-counts. Doc. [39].

## II. LEGAL STANDARD

A claim of unlawful discrimination may be established through direct or indirect evidence. Because Plaintiff's claim is not based on any direct evidence of discrimination, the Court will apply the *McDonnell Douglas* burden-shifting analysis. *Starkey v. Amber Enterprises, Inc.*, 987 F.3d 758, 763 (8th Cir. 2021) (age discrimination claim); *Carter v. Atrium Hosp.*, 997 F.3d 803, 808 (8th Cir. 2021) (race discrimination claim). Under the *McDonnell Douglas* burden-shifting framework, Plaintiff must first demonstrate a *prima facie* case of discrimination; then the burden shifts to Defendant to articulate a legitimate, non-discriminatory reason for the challenged action; finally, if Defendant offers such a reason, the burden shifts back to Plaintiff to show the proffered reason is merely a pretext for discrimination. *Id.* If Plaintiff fails to make a *prima facie* case, the Court grants summary judgment. *See, e.g.*, *Carter*, 997 F.3d at 809 (upholding district court's

granting of summary judgment in favor of employer when the plaintiff failed to make out a *prima facia* case of race discrimination); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (explaining if Plaintiff fails to make a sufficient showing on an essential element of her case with respect to which he or she has the burden of proof, the moving party is "entitled to a judgment as a matter of law").

The Court views any factual disputes in the light most favorable to Plaintiff, *Scott v. Harris*, 550 U.S. 372, 380 (2007), and will grant summary judgment only if evidence could not support any reasonable inference for Plaintiff. *Hilde v. Cty. of Eveleth*, 777 F.3d 998, 1004 (8th Cir. 2015) ("[I]f the plaintiff lacks evidence that clearly points to the presence of an illegal motive, he must avoid summary judgment by creating the requisite inference of unlawful discrimination through the *McDonnell Douglas* analysis, including sufficient evidence of pretext."); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986) ("[T]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff."). Despite this deferential standard, Plaintiff will not withstand summary judgment with "[m]ere allegations, unsupported by specific facts or evidence beyond [her] own conclusions." *Thomas v. Corwin*, 483 F.3d 516, 526 (8th Cir. 2007); *Palesch v. Mo. Comm'n on Human Rights*, 233 F.3d 560, 570 (8th Cir. 2000) (explaining an "inference" of discrimination is not raised by a "plaintiff's general, conclusory allegations and opinions").

### III.   DISCUSSION

In this case, one procedural note on summary judgment is in order before the Court begins its analysis. The Local Rules of this District require each party opposing summary judgment to file a Response to Statement of Material Facts that "must set forth each relevant fact as to which the party contends a genuine issue exists" and must support the dispute "with specific citation(s)

4

to the record." L.R. 4.01(E).  All facts in the "moving party's Statement of Uncontroverted Material Facts shall be deemed admitted for purposes of summary judgment unless specifically controverted by the opposing party." *Id.*

For her responses to numerous paragraphs in Defendant's Statement of Uncontroverted Material Facts, Plaintiff did not properly indicate that a genuine issue existed, nor did she cite to the record supporting a contradiction.  As one example, Defendant stated: " NCU did not want to lose Plaintiff as an employee and believed that the reassignment to the position of Member Services Representative was a good use of Plaintiff's skills."  Doc. [41] ¶ 120.  To which Plaintiff responded, "Deny. Defendant's actions of demoting Plaintiff were intended to force her to quit."  Doc. [49] ¶ 120.  Like that example, Plaintiff failed to properly dispute many of Defendant's facts by pointing to citations in the record.  Accordingly, as the Local Rules provide, the Court deems those facts discussed herein that Plaintiff did not properly controvert as admitted.  L.R. 4.01(E); *see also, e.g.*, *DaPron v. Spire, Inc. Ret. Plans Comm.*, 377 F. Supp. 3d 946, 950 (E.D. Mo. 2019) (finding objections plaintiff raised "that d[id] not cite to the record" were "ineffective for purposes of establishing a genuine factual dispute"), *aff'd*, 963 F.3d 836 (8th Cir. 2020).

    a. **Discrimination by Demotion (Counts I–II)**

Plaintiff bases her race and age discrimination claims (Counts I–II) on NCU's job reassignment, or "demotion," in February 2019 from Assistant Branch Manager to Member Service Representative II.  For reasons discussed below, the Court grants summary judgment in favor of NCU on Counts I and II because Plaintiff's claims for discrimination fail at the *prima facie* stage, and, even if she had met the elements of her *prima facie* case, she would be unable to establish pretext on this record.

5

To establish a *prima facie* case for age and race discrimination, Plaintiff must show, *inter alia*, that she was meeting NCU's "legitimate expectations" *at the time* she was demoted. *Starkey*, 987 F.3d at 763–64 (age discrimination); *Carter*, 997 F.3d at 809 (race discrimination). NCU argues that Plaintiff cannot meet her *prima facie* burden on Counts I and II because the record conclusively shows that Plaintiff was not meeting NCU's "legitimate expectations" at the time of she was reassigned. The Court agrees.

The undisputed evidence shows at the time of Plaintiff's demotion—the relevant time frame for this analysis—Plaintiff did *not* meet NCU's reasonable expectations. Even after ten years of experience as Assistant Branch Manager, Plaintiff had difficulty completing the basic tasks of her position such as completing audits, developing marketing and management plans, and keeping track of routine assistant manager tasks. Plaintiff testified she struggled to keep up with the workload and that it was "overwhelming." Doc. [41-7] at 45 (82:10–20). Her ability to manage and lead was also lacking as well as her ability to report to work on time. *See, e.g.*, Doc. [41-20] at 5 (17:16–17); *id.* at 7–8 (23:21–24:14); *id.* at 7 (23:8–13); *id.* at 14–15 (34:24–35:6); Doc. [41-11] at 22. NCU believed Plaintiff failed to address problems appropriately and with the professionalism expected of an assistant branch manager. This deficiency was on full display in December 2018 when she got into a verbal altercation with a subordinate employee in front of customers. By the end of 2018, the Jennings Branch was the only branch to not have reached its budgeted growth goal for 2018. Doc. [41-22]. Because the undisputed evidence shows Plaintiff was not meeting the requirements of her job at the time of her demotion, Plaintiff failed to make a *prima facie* case for age and race discrimination.[4]

---

[4] The Court notes Plaintiff's *prima facia* case for race discrimination *also* fails because she presented no evidence that the context of her demotion warrants an inference of discrimination. *See Carter v. Atrium Hosp.*, 997 F.3d 803, 809 (8th Cir. 2021). An inference of discrimination may be shown by evidence that an employer treated the plaintiff-employee differently than similarly situated non-African American employees, id., but here, Plaintiff admits she has

6

The only evidence Plaintiff offers to show that she *did* meet NCU's expectations is a 2018 Job Evaluation where she was described as having the "skills and knowledge" to be an assistant branch manager. *See* Doc. [41-14] at 1. However, Plaintiff cherry-picks this positive part and overlooks many other sections of her 2018 Job Evaluation. As an example, the Evaluation explains although Plaintiff "does possess the skill to carry out assignments, we want her to carry those assignments out in a timely manner. We want to see [Plaintiff] consistently meet all deadlines . . . be proactive if she is not going to be at work . . . improve her organizational skills and prioritize her work . . . [and] improve work methods, as a means to greater efficiency and consistency." *Id.* at 3–4. Also, in her 2018 evaluation, Plaintiff scored 1's and 2's on a five-point scale regarding management and leadership, scored no higher than a 2.5 on six out of the nine rubrics, and earned a total of 21.5 out of a possible 45 total points.[5] *Id.* at 4. This was a drastic change from the 2017 evaluation where she scored 29 points total. *Id.* at 8. Because Plaintiff has not raised a genuine issue of material fact as to whether she met NCU's expectations, her claim fails.

Even if Plaintiff had carried her burden of establishing a *prima facie* case of discrimination, for the reasons already discussed, NCU has carried its burden of demonstrating a legitimate, nondiscriminatory reason for demoting Plaintiff: poor performance and inability to effectively manage subordinates—to name just a few. Under *McDonnell Douglas*, the burden then shifts back to Plaintiff to show that those reasons for her demotion were pretextual. But Plaintiff fails at this stage, also.

---

not identified any non-African American similarly situated employees who were treated differently than she was. Doc. [49] ¶ 182.

[5] NCU's yearly performance evaluations have a point-scoring system, scoring from 0 to 5 points in different categories, with 45 total points possible. Doc. [41-14] at 1. A score of 2 indicates "Inconsistent (2 points): Performance meets some, but not all position requirements" and a score of 1 indicates "(unsatisfactory): Performance consistently fails to meet the minimum position requirements . . . ." *Id.*

7

In her Briefing, Plaintiff argues pretext for two reasons. Doc. [48] at 6–7. Neither is persuasive nor supported by the record.[6] Plaintiff first argues NCU demoted her based solely on the videotaped incident of her chastising an NCU employee in December 2018. The assertion is not supported by the record and is plainly untrue. The record shows several other reasons for Plaintiff's demotion, as already discussed by this Court. Moreover, the video of Plaintiff chastising and arguing with a subordinate employee in the presence of customers is just *additional* evidence presented by Defendant that is indicative of Plaintiff's overall inability to appropriately act as an Assistant Branch Manager.

Second, Plaintiff argues that NCU did not give her a reason for her demotion during the February 2019 meeting. But the record says otherwise, including Plaintiff's *own* admission that NCU told Plaintiff she was being demoted because the staff did not respect her. *See, e.g.*, Doc. [49] ¶ 119; Doc. [50-1] at 17–18 (44:16–45:2). The Court also notes the questionable legal authority for Plaintiff's argument on this point. Notably, this is the *only* legal authority cited by Plaintiff in her Brief as to Counts I and II (other than citing the basic elements for a *prima facia* case). Plaintiff cites to a district court decision from South Dakota for the proposition that "[f]ailure to tell an employee of the purported disciplinary issues can be evidence of pretext." Doc. [48] at 6–7 (citing *Dunn v. Lyman Sch. Dist. 42-1*, 35 F. Supp. 3d 1068, 1086 (D.S.D. 2014)). Plaintiff misinterprets *Dunn*. There, the court found that pretext could be inferred from a lack of documentation to support the adverse employment decision based upon the employee's alleged deficient performance. *Id.* The Court also notes *Dunn* is highly distinguishable to the case at bar.

---

[6] While there are well-established ways a plaintiff may show pretext in the Eighth Circuit, Plaintiff does not articulate any in her Briefing. *See Schaffhauser v. United Parcel Serv., Inc.*, 794 F.3d 899, 904 (8th Cir. 2015) ("A plaintiff may show pretext, among other ways, by showing that an employer (1) failed to follow its own policies, (2) treated similarly-situated employees in a disparate manner, or (3) shifted its explanation of the employment decision" (quoting *Lake v. Yellow Transp., Inc.*, 596 F.3d 871, 874 (8th Cir. 2010))).

In *Dunn*, not only were the apparent concerns about the employee's performance not reflected in any communications, documents, or performance evaluations, the evaluations instead contradicted the alleged concerns. *Id.* Here, however, Plaintiff's performance deficiencies were well-documented and communicated to Plaintiff.

Finally, while Plaintiff does not address this point in her briefing, at all, the Court construes Plaintiff's Response to Defendant's Statement of Material Facts, see, e.g., Doc. [49] ¶ 145, and Plaintiff's own Additional Statement of Material Facts, Doc. [50] ¶¶ 39–46, as an attempt to also argue pretext by presenting evidence that NCU treated Plaintiff and other similarly-situated employees of the same age and race in the same manner. *Williams v. United Parcel Serv., Inc.*, 963 F.3d 803, 808 (8th Cir. 2020) (explaining pretext may be shown by presenting evidence that the employer "treated similarly-situated employees in a disparate manner" which is a "rigorous" standard). Plaintiff points to NCU's treatment of Vera Billingsley, Barbara Foster, and Bridget Elliot. According to Plaintiff, these women's demotion, firing, and "forced retirement" is evidence of pretext because it shows NCU has a pattern of treating older African American women worse than other workers. As to age, Plaintiff admits Billingsley, Foster, and Elliot never mentioned being demoted, fired, or "forced into retirement" based on their age. *See* Doc. [49] ¶¶ 160, 158, 142–43, 161. As to racial based pretext, Plaintiff's argument fares no better. The record shows Elliot never mentioned being "pushed into retirement" based on her race. *See* Doc. [49] ¶ 169; Doc. [50-1] at 22 (54:5–10). Plaintiff admits that she does not know why NCU reassigned Foster, and that Foster is the *only* other older African American employee that Plaintiff knows was reassigned. *Id.* ¶¶ 172–73. Also, Foster is still employed by NCU. *Id.* ¶ 171. Lastly, Billingsley was terminated by NCU, but Plaintiff admitted in her deposition that she did not know why Billingsley was fired and admitted that there was nothing presented to Plaintiff that indicated

9

Billingsley was terminated either because of her age or race. Doc. [41-7] at 32–33 (63:15–64:10). As such, even giving Plaintiff an extremely generous reading of her claims, Plaintiff has still failed to show that NCU's reason for demotion was pretextual. *Starkey*, 987 F.3d at 764 (finding no pretext in age discrimination case where plaintiff failed to show younger employees were similarly situated to plaintiff and provided insufficient information to assess the circumstances surrounding the other employees terminations); *Williams*, 963 F.3d at 809 (finding no pretext in race discrimination case where plaintiff failed to provide any evidence of other similarly situated employees). Although Plaintiff argues NCU demoted her for discriminatory reasons, the record is barren, beyond Plaintiff's own conjecture, of any evidence to suggest NCU demoted Plaintiff based on her race or age.

### b. Constructive Discharge (Counts III–IV)

Plaintiff bases her constructive discharge claims (Counts III–IV) on her alleged intolerable employment conditions based on Whitlock allegedly micromanaging her and leaving Plaintiff without sufficient support and NCU's demotion and transfer of Plaintiff to a different branch. "To prove a constructive discharge, an employee must show that the employer deliberately created intolerable working conditions with the intention of forcing her to quit." *Blake v. MJ Optical, Inc.*, 870 F.3d 820, 826 (8th Cir. 2017) (quoting *Alvarez v. Des Moines Bolt Supply, Inc.*, 626 F.3d 410, 418 (8th Cir. 2010)). "An employee claiming constructive discharge shoulders a substantial burden." *Blake*, 870 F.3d at 826.

As Defendant points out, Doc. [45] at 23–24, and to which Plaintiff failed to address or respond, Plaintiff cannot prove constructive discharge because the Court of Appeals for the Eighth Circuit has "consistently recognized that an employee is not constructively discharged if she 'quits without giving [her] employer a reasonable chance to work out a problem.'" *Blake*, 870 F.3d at

10

826 (quoting *Trierweiler v. Wells Fargo Bank*, 639 F.3d 456, 460 (8th Cir. 2011)).  Plaintiff did not give NCU a "reasonable chance" to remedy the alleged mistreatment here, as she never told anyone there was a problem in need of fixing.  *See, e.g.*, Doc. [49] ¶ 24 (admitting "Plaintiff never complained to management about not receiving the promotion"); ¶¶ 144, 153 (admitting "Plaintiff never complained of intolerable working conditions to any member of management or her supervisor"); ¶¶ 148, 152 (admitting Plaintiff never complained to NCU management or union representatives about any discrimination).  The record does not show Plaintiff ever complained to NCU management about Whitlock's alleged harassment; nor did Plaintiff allow NCU the opportunity to resolve any alleged issues with her job reassignment.  In fact, the only communication by Plaintiff to NCU after learning of her demotion was her resignation letter of March 14, 2019, despite NCU's attempt to contact her.  Eighth Circuit precedent makes clear Plaintiff's failure to seek a solution before quitting is fatal to her constructive discharge claim.  *See, e.g.*, *Blake*, 870 F.3d at 826–27; *Trierweiler*, 639 F.3d at 460–61; *Alvarez*, 626 F.3d at 418–19.

The Court notes Plaintiff's constructive discharge claim fails for several other reasons, too—one being, Plaintiff also had to show that NCU intended to make her resign or, at a minimum, that Plaintiff's resignation was reasonably foreseeable given the conditions under which she was working.  *Betz v. Chertoff*, 578 F.3d 929, 936 (8th Cir. 2009).  There is no evidence that NCU intended to make Plaintiff resign and the record suggests otherwise.  The record shows that instead of terminating Plaintiff's employment at NCU for her inability to hold a management position, NCU chose to retain Plaintiff and offer her a position that best suited her strengths.  *See, e.g.*, Doc. [41-20] at 10 (27:21–22) (explaining NCU offered Plaintiff that position rather than "being let go"); *Id.* at 12 (29:21–23) ("we knew we were going to have to do something, but we didn't want

11

to lose her – lose employment completely"). In fact, Plaintiff admitted, see L.R. 4.01(E), that "NCU did not want to lose Plaintiff as an employee and believed that the reassignment to the position of Member Services Representative was a good use of Plaintiff's skills." Doc. [49] ¶ 120.

Nor does Plaintiff provide evidence that her resignation was reasonably foreseeable given the conditions under which she was working. *Betz*, 578 F.3d at 936 (explaining to prevail on a constructive discharge claim, a plaintiff must show that her "working conditions were rendered so objectionable that a reasonable person would have deemed resignation the only plausible alternative"). Plaintiff testified that her pay would remain the same in her new position, that the new branch she was assigned to was closer to her home, and that the new position would allow her to better utilize her customer service skills. While the Court can appreciate Plaintiff's discontent about being demoted, the record does not suggest her reassignment was one which "a reasonable employee in [her] position would find demeaning and intolerable." *Sanders v. Lee Cnty. Sch. Dist. No. 1*, 669 F.3d 888, 894 (8th Cir. 2012)[7] (quoting *Parrish v. Immanuel Med. Ctr.,* 92 F.3d 727, 732 (8th Cir. 1996)).

Moreover, Plaintiff cannot base the alleged intolerable working conditions on her direct supervisor, Whitlock, who, notably, was of the same race and older than Plaintiff. Plaintiff provides no evidence of intolerability other than her own subjective beliefs. *Allen v. Bridgestone/Firestone, Inc.*, 81 F.3d 793, 796 (8th Cir. 1996) ("The intolerability of working conditions is judged by an objective standard, not the plaintiff's subjective feelings."). But, intolerability is judged by an objective standard, and objectively, the record does not support

---

[7] The only case Plaintiff cites to in support of her constructive discharge claim is *Sanders v. Lee County School District No. 1*, 669 F.3d 888, 894 (8th Cir. 2012), for the proposition that reassignment to a different, undesirable position can be basis for constructive discharge. Doc. [48] at 8. But the Court notes that *Sanders*—where the plaintiff was transferred from the finance coordinator for the school district to a food services assistant position—is highly distinguishable to the facts here.

12

Plaintiff's subjective beliefs. At the time of Plaintiff's alleged mistreatment, Whitlock also supervised another branch and had subordinates that were under her supervision there as well. Plaintiff has not provided the Court any evidence that any other employees supervised by Whitlock found working under her intolerable. Additionally, Whitlock not only successfully managed the Downtown Branch, but continued to successfully manage multiple branches with multiple employees over a number of years with no demonstrated complaints. Now, Whitlock in her retirement, is still working part-time for NCU as a trainer of other managers. Even viewing the facts in the light most favorable to Plaintiff, at most, Plaintiff establishes that her work environment could have been unpleasant. But unpleasantness does not pass muster for a constructive discharge claim. *Jones v. Fitzgerald*, 285 F.3d 705, 716 (8th Cir. 2002) ("Constructive discharge requires considerably more proof than an unpleasant and unprofessional environment.").

## CONCLUSION

Even when viewing the evidence and inferences in the light most favorable to Plaintiff, the Court finds no genuine issues of material fact exist regarding her claims for race or age discrimination. On the undisputed facts, Plaintiff failed to meet her *prima facie* burden for her discrimination claims or show constructive discharge under Title VII and the ADEA.

Accordingly,

**IT IS HEREBY ORDERED** that Defendant's Motion for Summary Judgment, Doc. [39], is **GRANTED**.

A separate Judgment will accompany this Memorandum and Order.

Dated this 16th day of August, 2022.

_____
MATTHEW T. SCHELP
UNITED STATES DISTRICT JUDGE